Opinion filed September 7, 2006



















 
 
  
 
 







 
 
  
 
 




Opinion filed September 7, 2006

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00160-CR 

                                                    __________

 

                                  COREY DEMONE HALE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor County,
Texas

 

                                                   Trial
Court Cause No. 6240-D

 



 

                                                                   O
P I N I O N

The jury convicted Corey Demone Hale of the state
jail felony offense of delivery of cocaine, less than one gram, and assessed
his punishment at confinement for two years and a $7,000 fine.  Appellant attacks his conviction in four
issues.  We affirm.

                                                        Sufficiency
of the Evidence








In his first two issues, appellant challenges the
legal and factual sufficiency of the evidence supporting his conviction.  In order to determine if the evidence is
legally sufficient, we must review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App.
2000).  In order to determine if the
evidence is factually sufficient, we must review all of the evidence in a
neutral light and determine whether the evidence supporting guilt is so weak
that the verdict is clearly wrong and manifestly unjust or whether the evidence
contrary to the verdict is so strong that the beyond-a-reasonable-doubt burden
of proof could not have been met.  Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004); Ross v. State, 133
S.W.3d 618 (Tex. Crim. App. 2004); Vasquez v. State, 67 S.W.3d 229, 236
(Tex. Crim. App. 2002); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000); Cain v. State, 958 S.W.2d 404 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996).  The jury is the sole judge of the weight and
credibility of the witnesses=
testimony, and due deference must be given to the jury=s
determination.  Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 1981), art. 38.04 (Vernon 1979); Johnson, 23 S.W.3d at
8-9.

The State called two witnesses during the
guilt/innocence phase of the trial: (1) Department of Public Safety Narcotics
Officer Sergeant James C. Rhodes and (2) Department of Public Safety Chemist
William Chandley.  Appellant did not
present any witnesses during the guilt/innocence phase of the trial.  

On May 17, 2002, Sergeant Rhodes was working as an
undercover narcotics officer.  Sergeant
Rhodes testified that he and a confidential informant went to the residence at 834 Nelson Street
,
in Abilene, Texas, attempting to purchase
narcotics.  Sergeant Rhodes drove the
confidential informant to the residence in an undercover vehicle.  The vehicle had audio and video recording
capabilities.  Sergeant Rhodes said that,
when they arrived at the residence, they saw appellant and another man standing
in the front yard.  At that time,
Sergeant Rhodes did not know appellant=s
name.








Sergeant Rhodes testified that appellant
approached the vehicle.  The confidential
informant told appellant that they were looking for some dope, and Sergeant
Rhodes told appellant he needed $100 worth, meaning $100 worth of crack
cocaine.  At appellant=s request, Sergeant Rhodes opened his
shirt to show appellant that he was not wearing a wire.  Appellant asked Sergeant Rhodes if he was a
police officer, and Sergeant Rhodes responded that he was not a police
officer.  Appellant went inside the
residence and then came back outside with his right hand cupped as if he were
holding something in it.

Sergeant Rhodes said that appellant walked up to
the passenger side of the vehicle. 
Sergeant Rhodes was in the driver=s
seat.  Sergeant Rhodes leaned over to the
passenger=s side
and held out his hand.  Appellant dropped
five rocks of crack cocaine into Sergeant Rhodes=s
hand, and Sergeant Rhodes gave appellant five twenty-dollar bills.  Sergeant Rhodes and the confidential
informant then drove off.  Sergeant
Rhodes put the rocks into a plastic bag and submitted them to the DPS Abilene
Crime Laboratory for testing.

Sergeant Rhodes said that the camera equipment in
the undercover vehicle taped the buy operation. 
The confidential informant, appellant, the other man, and Sergeant
Rhodes were all shown in the videotape. 
Sergeant Rhodes identified appellant as being the man in the videotape
who gave him the drugs.  Sergeant Rhodes
testified that appellant handed the rocks to him and that he handed the money
to appellant.  The State introduced the
videotape into evidence and played it for the jury.

Chemist Chandley tested the rocks that Sergeant
Rhodes submitted to the DPS lab.  He
testified that the test results showed that the rocks contained cocaine and had
an aggregate weight of .56 grams.

The indictment alleged that appellant knowingly
delivered, by actual transfer to Sergeant Rhodes, a controlled substance
(cocaine) in an amount of less than one gram. 
See Tex. Health &
Safty Code Ann. '
481.002(8) (Vernon
Supp. 2006), '
481.112(a), (b) (Vernon 2003).  To prove
the offense as charged, the State had the burden to prove beyond a reasonable
doubt that appellant knowingly delivered to Sergeant Rhodes cocaine in an
amount of less than one gram.  See Section
481.112(a), (b).  Sergeant Rhodes
testified that appellant gave him the cocaine rocks in exchange for $100.  Appellant handed the cocaine rocks to
Sergeant Rhodes.  Chemist Chandley
testified that the rocks contained cocaine and had an aggregate weight of .56
grams.  The evidence was legally and
factually sufficient to support appellant=s
conviction for delivery of a controlled substance.  We overrule appellant=s
first and second issues.  

                                                               Batson
Challenges








In his third issue, appellant argues that the
trial court erred in denying his Batson challenges to three of the State=s peremptory challenges.  See Batson v. Kentucky,
476 U.S.
79 (1986).  During a Batson
hearing, appellant challenged the State=s
use of peremptory challenges to exclude one Hispanic and two African-American
veniremembers from serving on the jury. 
The use of peremptory challenges to exclude persons from serving on a
jury because of race violates the Fourteenth Amendment to the United States
Constitution.  Batson, 476 U.S. at 89; Jasper
v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); Ladd v State, 3
S.W.3d 547, 563 (Tex. Crim. App. 1999). Appellant contends that the State=s challenges to these three
veniremembers were racially motivated.

The party objecting under Batson must make a prima
facie showing of discriminatory motives. 
Herron v. State, 86 S.W.3d 621, 630 (Tex. Crim. App. 2002).  If the objecting party makes a
prima facie showing, then the burden shifts to the other party to come forward
with a race-neutral explanation.  Id.  The objecting party may rebut the
race-neutral explanation.  Id.  The trial court must then decide
whether the objecting party has proven purposeful discrimination.  Id.  Because the trial court=s decision frequently turns on an
evaluation of credibility, we give the trial court=s
decision great deference and will not disturb it unless it is clearly
erroneous.  Id.; Jasper, 61 S.W.3d at
421-22.       

During the Batson hearing in this case, the
State offered race-neutral explanations and reasons for striking the
veniremembers.  The prosecutor said that
he struck Mr. Medina, a Hispanic, based on his posture and his inability to communicate.  The prosecutor explained that he was very
hesitant on putting anyone on the jury who has trouble expressing himself.  The prosecutor based his strike of Mr.
Medina, in part, on a conversation involving Mr. Medina at the bench in the
presence of the trial judge.  Although
the record does not contain this discussion at the bench, the trial court
stated that it recalled Mr. Medina=s
Aresponses and the manner in which he
responded to counsel=s
questioning.@  The trial court then stated that the State
had offered a race-neutral reason for the strike of Mr. Medina.  The prosecutor pointed out to the trial court
that the State did not strike two other Hispanic veniremembers who ended up
serving on the jury.








The prosecutor provided two reasons for the strike
of Mr. Nichols, an African-American. 
First, the prosecutor said that he struck Mr. Nichols and Ms. Moon,
another veniremember, for punishment reasons because each had made the
statement A[g]ood
people make bad decisions.@  Second, the prosecutor explained that Mr.
Nichols had answered a question about the State=s
burden of proof by saying that he would hold the State to the burden of
absolute doubt instead of to a burden beyond a reasonable doubt.  Appellant failed to rebut the State=s reasons for striking Mr.
Nichols.  The trial court recalled Mr.
Nichols=s use of Aabsolute doubt@
in response to a question.  The trial
court determined that, whether Mr. Nichols was confused as to the State=s burden of proof or whether he
disagreed with the State=s
burden of proof under the law, the State had provided a race-neutral reason for
the strike.

The prosecutor said that he struck Ms. Franklin on
the punishment issue because of her statement that rehabilitation was
preferable to incarceration.  The
prosecutor explained that he struck two Anglo-American veniremembers, Mr.
Stirman and Mr. Bainbridge, based on their answers that they preferred
rehabilitation over incarceration.  The
prosecutor said that he made a mistake in failing to strike Mr. Cargal for the
same reason.  Appellant=s counsel stated that, although the
State used only six of its permitted ten peremptory challenges, the State
failed to strike Anglo-American veniremembers, Mr. Vanhuss and Ms. Schoppa, who
held the belief that rehabilitation was preferable to incarceration.  Appellant=s
counsel argued that the State=s
failure to strike Mr. Vanhuss and Ms. Schoppa established a discriminatory purpose
in the State=s strike
of Ms. Franklin.  The prosecutor said
that he did not have any notes on Ms. Schoppa but that Mr. Vanhuss had
indicated that he advocated personal responsibility.  The prosecutor explained that he looks for
jurors that advocate personal responsibility in a punishment case.  The trial court concluded that the State had
provided a race-neutral reason for the strike of Ms. Franklin.

The State offered race-neutral explanations for
striking Mr. Medina, Mr. Nichols, and Ms. Franklin.  Based on the evidence in the record, we find
that the trial court could have reasonably concluded that the State=s race-neutral explanations were
sincere and that the peremptory challenges in question were not racially
motivated.  Therefore, we hold that the
trial court=s ruling
on appellant=s Batson
challenges was not clearly erroneous.  We
overrule appellant=s third
issue. 

                              Evidence
of Extraneous Offenses During Punishment Phase








In his fourth issue, appellant argues that the
trial court erred in denying his motions in limine seeking to exclude evidence
of extraneous offenses during the punishment phase.  During the punishment phase, appellant
objected to the admission of evidence of the extraneous offenses on two
grounds.  First, appellant argued that
the evidence was not relevant to a determination of the punishment issue.  See Tex.
R. Evid. 402.  Second, appellant
sought exclusion of the evidence on the ground that its probative value was
substantially outweighed by the danger of unfair prejudice.  See Tex.
R. Evid. 403.  The trial court
overruled appellant=s
objections and allowed admission of the evidence.

The State presented evidence of a 1997 conviction
for retaliation in Harris
 County.  The State also presented evidence of a number
of unadjudicated offenses, including the
following: (1) possession of cocaine on May 30, 2003, in Taylor County; (2)
possession of marihuana on February 15, 2004, in Taylor County; (3) possession
of marihuana on February 16, 2004, in Taylor County; (4) possession of
cocaine on February 16, 2004, in Taylor County; (5) possession of marihuana on
May 2, 2004, in Taylor County; (6) fleeing from a peace officer and providing a
false name and date of birth to a peace officer on September 28, 2004, in
Taylor County; and (7) possession of marihuana on October 15, 2004, in Taylor
County.

We review a trial court=s
decision to admit extraneous offense evidence under an abuse of discretion
standard.  Mitchell v. State, 931
S.W.2d 950, 953 (Tex. Crim. App. 1996).  Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1) (Vernon. Supp. 2006), provides in part that,
during the punishment phase, the State may offer evidence: 

[A]s
to any matter the court deems relevant to sentencing, including but not limited
to the prior criminal record of the defendant, his general reputation, his
character, an opinion regarding his character, the circumstances of the offense
for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules
of Evidence, any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant
or for which he could be held criminally responsible, regardless of whether he
has previously been charged with or finally convicted of the crime or act.            

 

The Texas Court of Criminal Appeals has observed that, in
determining what is relevant to sentencing, the important question is Awhat is helpful to the jury in
determining the appropriate sentence for a particular defendant in a particular
case.@  Rogers
v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).








The language of Article 37.07, section 3(a)(1)
establishes that the extraneous offenses are relevant to the assessment of
appellant=s
punishment.  Punishment phase evidence
that the trial court deems relevant is still subject to a Rule 403
analysis.  See Rogers, 991 S.W.2d at 266-67.  Under Rule 403, even relevant evidence may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice.  As noted in Rogers, relevant evidence
is inadmissible under Rule 403 to the extent that its degree of unfair
prejudice substantially outweighs the probative value of the evidence.  Rogers,
991 S.W.2d at 266 (emphasis in original). 
AUnfair
prejudice@ refers
to Aan undue tendency to suggest [a]
decision on an improper basis.@  Id.

Appellant committed the instant offense on May 17,
2002.  The State presented evidence of a
prior conviction occurring in 1997.  The
State also presented evidence of seven unadjudicated offenses occurring after
appellant committed the instant offense. 
Six of the subsequent offenses were similar to the instant offense in
that they were drug related offenses. 
The extraneous offense evidence demonstrated a pattern of conduct and
had substantial probative value in aiding the jury in its assessment of a
sentence.  Given the probative value of
this evidence, the trial court did not abuse its discretion in refusing to
exclude the extraneous offense evidence under Rule 403.

The trial court did not abuse its discretion in
admitting evidence of extraneous offenses during the punishment phase.  We overrule appellant=s
fourth issue.

                                                               This
Court=s Ruling

We affirm the judgment of the trial court.

 

TERRY McCALL

JUSTICE

 

September 7, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.